UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELE D. BUSH, an individual,<br><br>        Plaintiff,<br><br>        v.<br><br>PIONEER HUMAN SERVICES, a Washington State Corporation,<br><br>        Defendant. | CASE NO. C09-0518 RSM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR POSTPONEMENT OF EXPERT DISCLOSURE DEADLINE AND CLARIFYING DEADLINE FOR RULE 35 EXAMINATION |

## **I.  INTRODUCTION**

This matter comes before the Court on Defendant's "Motion for Postponement of Expert Disclosure Deadline and for Clarification Regarding FRCP 35 Examination Deadline." (Dkt. #22). In this sexual harassment case against her former employer, Plaintiff is seeking damages for emotional distress. One day before the expert disclosure deadline set by the Court's scheduling order, Defendant filed the instant motion, moving to extend the expert disclosure deadline by two months. Defendant argues that it has good cause for the extension because Plaintiff did not provide the medical records Defendant needs in order to formulate an expert report (or decide whether one is needed). Additionally, Defendant requests that this Court clarify whether the Rule 26(a)(2) expert report deadline set forth in the Court's scheduling order applies to medical examination experts under Rule 35.

ORDER
PAGE - 1

## II. BACKGROUND

Plaintiff filed the instant lawsuit on April 17, 2009. On June 26, 2009, this Court issued a scheduling order setting the deadline for "Reports from expert witnesses under FRCP 26(a)(2)" as November 12, 2009.

The parties commenced discovery, and Defendant served interrogatories and requests for production ("RFP") on Plaintiff. In interrogatory 14, Defendant asked Plaintiff to identify all health care providers she used in the past five years. In RFP 6, Defendant requested "copies of all documents and medical records relating to the treatment and/or consultation described in your response to Interrogatory 14." On July 27, 2009, Plaintiff responded to Defendant's discovery requests by identifying seven health care providers. However, Plaintiff did not turn over copies of Plaintiff's medical records, but instead stated that "Plaintiff will provide Defendant with medical records provided there are appropriate measures to assure that subject matter is narrowly tailored and the medical information will remain confidential." (Dkt. #23-2 at 5). Plaintiff additionally stated that "Plaintiff will produce, for inspection, responsive, non-privileged documents at a mutually agreeable time and place." (*Id.*).

On August 26, 2009, Defendant sent Plaintiff a letter addressing perceived deficiencies in Plaintiff's discovery responses. With respect to RFP 6, Defendant succinctly instructed Plaintiff to "Please produce copies of the medical records referred to in your response." (Dkt. #23-3 at 3).

On September 4, 2009, the parties conferred by telephone to discuss discovery issues including Plaintiff's medical records. Plaintiff's counsel reiterated that Plaintiff would not provide copies of Plaintiff's medical records without a protective order governing their confidentiality and that Plaintiff would only produce relevant records from the past five years. At this time or shortly before, Plaintiff provided Defendant with a protective order and instructed that if it were signed by Defendant and entered by the Court, Plaintiff would produce copies of her medical records. Defendant was unwilling at that time to agree to Plaintiff's version of a stipulated protective order, apparently because it would allow personnel files of Defendant's employees to be filed with the Court unsealed.

On September 8, 2009, Plaintiff sent Defendants a letter memorializing the September 4 teleconference and reiterating:

> Medical records will only be produced once the parties agree to an appropriate stipulates [sic] protective order and the same is entered by the Court. Plaintiff proposes producing five years of medical records. Once you have had an opportunity to review this issue with your client please let us know.

(Dkt. #23-4 at 3).

Around the end of September or early October, the parties agreed to extend all discovery deadlines by two weeks due to Plaintiff's recent surgery. (Dkt. #12). This extended the expert disclosure deadline to November 26, 2009.

On October 7, 2009, Plaintiff served supplemental responses and stated once again that Plaintiff would provide medical records once measures were in place to assure that the subject matter was narrowly tailored and the information would remain confidential. Again, Plaintiff stated that she was willing to produce responsive, non-privileged records for inspection at a mutually agreeable time and place. (Dkt. #23-5).

On November 2, 2009, Defendant provided Plaintiff with its own version of a stipulated protective order. (Dkt. #23-6). It also issued subpoenas for Plaintiff's medical records to Plaintiff's health care providers. On November 12, 2009, Plaintiff wrote to Defendant explaining that Plaintiff could not agree to Defendant's proposed protective order because it would require Plaintiff to file a motion to seal every time Plaintiff wanted to include information relating to an employee personnel file, an onerous task in Plaintiff's view. (Dkt. #23-7). The letter also stated that Plaintiff was willing to release her medical records for the past five years so long as Defendant agreed to keep them confidential. (*Id.*). On November 16, 2009, Plaintiff wrote to Defendant, objecting to Defendant's subpoenas on the grounds that they were "unlimited in temporal scope." (Dkt. #23-8 at 2). Again, Plaintiff's counsel stated that Plaintiff would be willing to produce records for the past five years so long as the records were kept confidential. (*Id.*). Plaintiff's counsel also stated, "If you find information that is relevant [in the five years of medical records] and believe you need to go back further, then we can discuss the specific issue at that time." (*Id.*).

ORDER
PAGE - 3

Prompted by Plaintiff's objections, Defendant withdrew the subpoenas. On November 24, Defendant agreed to Plaintiff's version of the stipulated protective order. The next day, Plaintiff produced what it deemed to be relevant medical records for the past five years. Defendant disputes whether all relevant records were provided. That same day, November 25, 2009, the day before the expert disclosure deadline, Defendant filed the instant motion to extend the deadline because it had only just received Plaintiff's medical records and because it felt those records were incomplete.

### III. DISCUSSION

**A. Extension of Expert Disclosure Deadline**

The parties agree that a motion to modify the Court's scheduling order to extend a deadline is governed by Rule 16 and the Ninth Circuit's decision in *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992). A party seeking to amend a scheduling order must show "good cause." Fed. R. Civ. Proc. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. The schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (*quoting* Fed. R. Civ. Proc. 16 advisory committee's notes (1983 amendment)). Prejudice to the opposing party may supply additional reasons to deny an extension, but the focus of the inquiry is on the moving party's reasons for seeking modification. *Id.* "If that party was not diligent, the inquiry should end." *Id.*

A review of the record shows that Defendant did not act diligently in attempting to meet the expert disclosure deadline. While it goes without saying that Defendant cannot create an expert report without Plaintiff's medical records, Defendant did not take sufficient steps to diligently try to obtain those files. Plaintiff's position regarding the medical records has been consistent since the beginning of discovery – Plaintiff is willing to produce copies of her records for the past five years, limited to relevant topics, so long as there is a protective order in place to protect the confidentiality of those sensitive materials. Thus, it should have been clear to Defendant since July 27, 2009 that the primary impediment to obtaining the medical records

and creating an expert report was the nonexistence of any measures protecting confidentiality. Yet Defendant did nothing to get over this hurdle until November 2 when it sent Plaintiff its own proposed protective order. Even when Plaintiff proposed a stipulated protective order in early September – which Defendant eventually accepted at least with respect to medical records – Defendant neither accepted it nor made a counter proposal for two months. Defendant should have diligently negotiated with Plaintiff to agree on a protective order, or if that failed, made the proper motion to this court to resolve the impasse over the protective order. This is not to say that diligence required Defendant to accept Plaintiff's proposed protective order, but it did require Defendant to do *something* to move discovery forward. Parties may not ignore scheduling deadlines simply because they are at an impasse, especially when little is being done to resolve it.

Secondly, Defendant should have realized in early October, when the parties agreed to extend deadlines by two weeks, that it would need a significant extension of the expert disclosure deadline. At that point, Defendant should have known that the deadline was less than two months away, yet Defendant was nowhere nearer obtaining Plaintiff's medical records than it had been at the beginning of discovery. Defendant still had to resolve the protective order dispute, resolve any disputes about scope, obtain the records, decide whether to hire an expert, interview experts, hire one, and have him write a report. A diligent defendant would have realized the urgency of the situation and taken prompt action.

Third, by the time Defendant did make an effort to resolve the protective order disagreement on November 2, it was simply too late to file a timely report. Even if Plaintiff had immediately agreed to Defendant's version of the protective order – an optimistic scenario considering it differed substantially from Plaintiff's version – and even if Plaintiff hand delivered all medical records the very next day, Defendant would have had only 24 days to review the records, hire an expert, and have that expert write a report. While that may be possible, it is clear that a more realistic scenario would not give Defendant enough time to comply with the deadline.

Fourth, Defendant's issuance of subpoenas to Plaintiff's medical providers on November 2 does not indicate diligence. Plaintiff already had the records; the problem was that the parties had not agreed on a means to keep them confidential. Issuing subpoenas does nothing to solve this problem.

Finally, Defendant could have inspected Plaintiff's medical records at any time, which may have helped it decide whether hiring an expert was necessary or desirable. Defendant disputes that this option was available, but Plaintiff's initial and supplemental responses to RFP 6 both clearly state, "Plaintiff will produce, for inspection, responsive, non-privileged documents at a mutually agreeable time and place." (Dkt. #23-2 at 5; Dkt. #23-5 at 4). Defendant has produced no evidence to the contrary.

For all of the foregoing reasons, the Court finds that Defendant has not shown good cause for an extension. Additionally, Plaintiff would be prejudiced by an extension of the expert disclosure deadline because it would necessitate an extension of all deadlines including the trial deadline. More importantly, Plaintiff filed her expert report on November 12, 2009, well before the deadline. It would be unfair for Defendant to have two additional months time, with Plaintiff's expert report in hand, to file its own report. Therefore, Defendant's motion to extend the expert disclosure deadline is DENIED.

Defendant may not have its own non-rebuttal expert witness under Rule 26(a)(2). Defendant will not be crippled by this result, however, because this order does not prevent it from using a rebuttal expert witness or, as discussed below, a Rule 35 medical expert if the Court allows such an examination.

**B. Whether the Rule 26(a)(2) Expert Deadline Applies to Rule 35 Experts**

Defendant moves for the Court to clarify that the Rule 26(a)(2) expert disclosure deadline set forth in the Court's scheduling order does not apply to Rule 35 expert examinations and reports. Plaintiff argues that the Court should not address this issue because it would be an improper advisory ruling. As Plaintiff sees it, no Rule 35 examination has been requested or ordered, no determination has been made as to whether Plaintiff has sufficiently put her mental

health in controversy to justify an examination, and the question of whether there is good cause to order a Rule 35 examination is not before this Court. While these facts are true, they do not persuade the Court that clarifying the deadlines on the scheduling order would be an "advisory ruling." Certainly this sexual harassment case presents an actual case or controversy. The parties are entitled to know what the discovery deadlines are so that they may try their case. The fact that a deadline may, in the end, not be applicable because Defendant chooses not to move for a Rule 35 examination, does not mean that a ruling setting the deadline is advisory.

Turning to the main issue, although the limited case law is somewhat split on whether a Rule 35 expert report and examination must be done before the expert disclosure deadline, this Court takes the position that the deadline set in the scheduling order for expert reports under Rule 26(a)(2) does not apply to the issuance of a Rule 35 report. The language of the rules provides some support for the proposition that the rules are separate and exclusive. Rule 26(a)(2) applies to witnesses who are specially retained to provide expert testimony in the case, while Rule 35 permits the Court to order a party to submit to a mental or physical examination whether or not the examiner was previously retained to provide expert testimony. Rule 26(a)(2) requires the disclosure of an expert report, but Rule 35 provides that the report must be given to the opposing party only "on request." The content of the report differs between the rules. Additionally, while sanctions for violating Rule 26(a)(2) are covered by Rule 37, Rule 35 itself covers the sanctions imposed if the examining party fails to disclose a report, indicating that the rules are separate. *See Waggoner v. Ohio Cent. R.R., Inc.*, 242 F.R.D. 413, 414 (S.D. Ohio 2007). The district court in Waggoner further explained:

> At the time a party requests a Rule 35 examination, it is not necessarily the case that the examining physician will be called to testify at trial. Often, the results of the examination simply confirm what the injured party's doctors have reported, and the Rule 35 examiner therefore serves only as a consultant to the defending party and not as a trial witness. Although parties could conceivably schedule Rule 35 examinations far enough in advance of the Rule 26(a)(2) deadline so that, if the examiner were then to be used as a witness at trial, the Rule 35 report could be prepared by the deadline, that ignores the fact that a Rule 35 report is to be prepared and issued only if requested by the party who is examined. To interpret Rule 26(a)(2) to require mandatory issuance of the report would

ORDER
PAGE - 7

contradict the plain language of Rule 35. Consequently, the Court concludes that the deadline which it set in this case for the disclosure of expert reports under Rule 26(a)(2) does not apply to the issuance of a Rule 35 report.

*Id.*

Finally, in this Court's experience, Rule 35 examinations are usually conducted, if at all, late in the discovery process after the plaintiff has been deposed. It was not this Court's intention in issuing a standard scheduling order to make drastic changes to the normal discovery timeline.

There is no specific deadline for Rule 35 examinations or reports. However, assuming a party moves for an examination and that motion is granted, the examination must be conducted sufficiently before the discovery cutoff to give the examined party time to review the report (if requested), and depose the examiner if necessary.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's Motion for Postponement of Expert Disclosure Deadline (Dkt. #22) is DENIED.

(2) The "Reports from expert witnesses under FRCP 26(a)(2)" deadline set forth in the Court's scheduling order (Dkt. #9) does not apply to Rule 35 examinations.

(3) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 21st day of January, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE